**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ERWIN JIMENEZ GONZALEZ,

Petitioner,

v.

TODD BLANCHE, et al.,

Respondents.

**CASE NO.** 5:26-CV-05718-CTS

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

## I. INTRODUCTION

On September 28, 2026, Petitioner Erwin Jimenez Gonzalez ("Petitioner"), represented by counsel, filed a Petition for Writ of Habeas Corpus ("Petition"). (Pet., ECF No. 1.) The Petition alleges that Petitioner is in the custody of the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") in Adelanto, California, and that he is being held in violation of the Constitution and laws of the United States. (*See generally id*.) On October 5, 2026, Respondents filed an Answer to the Petition. (Ans., ECF No. 8.) On October 8, 2026, Petitioner filed his Traverse. (ECF No. 9). For the reasons set forth below, the Court GRANTS the Petition as to Count Two, dismisses the

remaining claims as moot, and ORDERS that Petitioner be released from custody immediately.

## II. BACKGROUND

The Petition sets forth the following facts: Petitioner is 39-year-old national and citizen of Guatemala. (Pet. ¶¶ 10, 19.[1]) He attempted to enter the United States without inspection on or about May 8, 2014. (*Id.* at ¶ 19.) He was apprehended shortly after arrival, then, on or about May 10, 2014, he was granted conditional parole and released on an Order or Recognizance. (*Id.* at ¶ 20.) He was also placed into removal proceedings, but Respondents later exercised their prosecutorial discretion to terminate those proceedings, and on or about November 18, 2022, an immigration judge ("IJ") dismissed the proceedings. (*Id.* at ¶ 21.) Petitioner is the father of a four year-old child who is a United States citizen, step-father to two other United States citizen children, and his wife is pregnant. (*Id.* at ¶¶ 10, 35.) Petitioner appeared for all his regularly scheduled ICE check-ins and immigration appointments. (*Id.* at ¶ 22.) There is no order of removal in effect against Petitioner. (*Id.* at ¶ 30.)

The Answer does not dispute these allegations but adds that, on June 8, 2026, Petitioner was arrested and charged with two misdemeanor counts of driving under the influence of alcohol in Ventura. (Ans. 2 (citing to I-213 Form attached to the Petition ("I-213 Form"), ECF No. 1, at 31–34).) It appears that Respondents lodged an immigration detainer with the jail where Petitioner was held on June 9, 2026, but that the detainer was not honored and Petitioner was released. (I-213 Form, at 32; *see* Pet. ¶ 26.) Two months later, on August 8, 2026, while Petitioner was at a gas station for an oil change, he was arrested and re-detained. (Pet. ¶ 23;

---

[1] Pinpoint citations refer to paragraphs and, where none, to the page numbers in the CM/ECF-generated headers of filed documents.

Ans. 2.) At the time of Petitioner's arrest, Respondents provided no explanation, warrant, or notice of revocation of his conditional parole, and did not provide Petitioner with an opportunity to contest his re-detention or to be heard by a neutral adjudicator. (*Id.* at ¶ 24.) On September 8, 2026, Petitioner received a bond hearing before an IJ. (ECF No. 1, at 46; Ans. 2.) He remains in custody. (Pet. ¶ 2.)

## III. PETITIONER'S CLAIMS

Petitioner challenges his detention on six grounds: (1) "Detention in Violation of the Fifth Amendment (substantive due process)" (*id.* at ¶¶ 68–73); (2) "Violation of Fifth Amendment Right Procedural Due Process" (*id.* at ¶¶ 74–82); (3) "Unreasonable Search and Seizure—Detention and Arrest in Violation of the Fourth Amendment" (*id.* at ¶¶ 83–91); (4) "Violation of 8 U.S.C. § 1357(a)(2) Warrantless Arrests Without Probable Cause of Flight Risk" (*id.* at ¶¶ 92–94); (5) "Violation of 8 C.F.R. § 287.8(c)(2)(ii)" (*id.* at ¶¶ 95–98); and (6) "Non-Statutory Ultra Vires Action/Accardi Doctrine Violation" (*id.* at ¶¶ 99–103). He seeks, *inter alia*, immediate release, an injunction against re-detention while Petitioner is not subject to a final order of removal without prior written notice and an opportunity to respond and be represented by counsel, and reasonable costs and attorney fees. (Pet. 26.)

## IV. LEGAL STANDARD

Writs of habeas corpus may be granted by the federal courts to noncitizens in the custody of immigration authorities. 28 U.S.C. § 2241(c)(3) ("The writ of habeas corpus" extends to individuals "in custody in violation of the Constitution or laws or treaties of the United States."); *Doe v. Garland*, 109 F.4th 1188, 1194 (9th Cir. 2024) (holding that petition challenging alien's detention without bond hearing fell within the "core of habeas"). The writ is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. The government therefore may detain individuals outside of the criminal context only "in certain special and 'narrow' nonpunitive 'circumstances.'" *Id.* (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

As the Supreme Court has repeatedly held, under most circumstances, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original) (collecting cases). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). Thus, while "in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'" *Id.* (alterations in original) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). The liberty of a

person who has been released from government custody is valuable and falls within the protection of the Due Process Clause. *Morrissey*, 408 U.S. at 482; *Pinchi*, 792 F. Supp. 3d at 1032.

Courts generally apply the three-part test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine what procedures are constitutionally sufficient to protect a liberty interest. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022) ("assuming without deciding" that *Mathews* applied and applying test in immigration detention context); *Pinchi*, 792 F. Supp. 3d at 1033, 1033 n.2 (discussing Ninth Circuit's treatment of *Mathews*); *Perez Bueno v. Janecka*, No. 5:25-CV-03376-CAS-BFM, 2026 WL 309934, at *3 (C.D. Cal. Feb. 5, 2026) (applying *Mathews* test and ordering immediate release of noncitizen asylum applicant previously released on own recognizance by DHS who was detained again without pre-detention notice or hearing). Under that test, courts consider (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

## V. DISCUSSION

Among other claims, Petitioner alleges a violation of his Fifth Amendment procedural due process rights arising from the revocation of the parole granted to him in 2014. (Pet. ¶¶ 74–82.) In many recent decisions, courts have granted habeas relief to petitioners in similar circumstances, finding that immigration authorities violated due process by re-detaining, without notice or an opportunity to be heard, noncitizens who had been detained by ICE sometime after entering the United States but were then released from custody. *See, e.g.*, *Sierra Bernal v.*

*Janecka*, No. 5:26-CV-03116-DMK, 2026 WL 2138827, at *1 (C.D. Cal. July 17, 2026) (granting habeas petition filed by noncitizen from Colombia who had been detained by DHS when she entered the United States in April 2023, was then released and placed in an Alternatives to Detention supervision program, but was later re-detained after appearing for an immigration court hearing without notice that her release was being revoked or opportunity to contest her re-detention); *Singh v. Janecka*, No. 5:26-CV-01466-AYP, 2026 WL 1334832, at *2, 6 (C.D. Cal. May 8, 2026) (granting habeas petition filed by noncitizen from India who had been detained by DHS when he entered the United States in June 2024, was then released and placed in an Alternatives to Detention supervision program, but was later re-detained after appearing for an immigration court hearing without notice of the reasons for his arrest). Consistent with these decisions, and as discussed below, the Court finds that Petitioner's re-detention—without prior notice or a meaningful opportunity to be heard—violates due process and merits relief.

**A. Petitioner Has a Protected Liberty Interest Under the Due Process Clause**

Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State" and "the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989). With respect to the first question, it is well-established that freedom from government detention is a protected liberty interest. *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects.").

Particularly relevant here, the liberty of a person who has been released from government custody is valuable and falls within the protection of the Due Process

Clause. *Morrissey*, 408 U.S. at 482. A parolee "relie[s] on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee," and as such, a parolee possesses a protected interest in his continued liberty. *Id.* "Just as people on preparole, parole, and probation status have a liberty interest, so too does [petitioner] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019). "[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, *after that individual is released from custody [he] has a protected liberty interest in remaining out of custody*." *Pinchi*, 792 F. Supp. 3d at 1032 (emphasis added). Thus, "[w]hen DHS released [Petitioner] . . . after determining that he was [neither] a danger nor a flight risk, it conferred a conditional liberty interest that may not be withdrawn without constitutionally sufficient process." *Singh*, 2026 WL 1334832, at *2. Accordingly, the Court concludes that Petitioner has a protected liberty interest in his continued freedom from custody.

**B. Petitioner's Re-Detention Violates Due Process**

As Petitioner has a protected liberty interest, the Court must next determine what procedural protections are due to protect that interest, balancing the *Mathews v. Eldridge* factors: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the government's interest. *Mathews*, 424 U.S. at 335; *Pinchi*, 792 F. Supp. 3d at 1033; *Singh*, 2026 WL 1334832, at *2.

With respect to the first *Mathews* factor, Petitioner has, without any doubt, a liberty interest—remaining out of custody—that is substantial. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Numerous recent decisions have found that a

petitioner's interest in remaining out of ICE custody after release under supervision weighs strongly in that petitioner's favor when balancing the *Mathews* factors. *E.g.*, *Singh*, 2026 WL 1334832, at *3–4. There is no reason to reach a different result here. In 2014, Petitioner was detained and then released on an Order or Recognizance. (Pet. ¶ 20.) Further, in 2022, Respondents chose to abandon their efforts to remove Petitioner from the United States, voluntarily terminating removal proceedings against him. (*Id.* at ¶ 21.) Petitioner lived free from custody for over twelve years, during which time he formed a family and had children. (*Id.* at ¶¶ 10, 35.) While Petitioner may have been subject to supervision "during this time, 'a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated.'" *Singh*, 2026 WL 1334832, at *3 (quoting *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017)). Further, Respondents do not argue that Petitioner does not have a substantial liberty interest in remaining out of custody. (*See generally* Ans.) Thus, the Court finds that the first *Mathews* factor weighs strongly in Petitioner's favor.

The second *Mathews* factor also weighs in Petitioner's favor. The risk of an erroneous deprivation of a liberty interest is high when no process is provided prior to the deprivation of that interest, and the Supreme Court therefore "usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon*, 494 U.S. at 127. Thus, many recent decisions have found the risk of an erroneous deprivation of a liberty interest to be high for noncitizens paroled into the United States whose parole was revoked without pre-deprivation process. *See*, *e.g.*, *Rankbirsingh v. Giles*, No. 5:26-CV-00907-FLA (PVC), 2026 WL 1455421, at *6 (C.D. Cal. May 20, 2026) ("The court finds the risk of an erroneous deprivation of Petitioner's liberty interest was substantial based on Respondents' failure to provide any notice of, explanation for, or opportunity to be heard regarding Petitioner's arrest and re-detention, and the

revocation of his bond."); *Perez Bueno*, 2026 WL 309934, at *4 (finding that "the risk of erroneous deprivation of liberty is high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker); *Hasratyan v. Bondi*, No. 5:26-CV-00210-MCS-ADS, 2026 WL 288909, at *3 (C.D. Cal. Feb. 2, 2026) ("There is an unacceptably high risk that the government would erroneously deprive—or already has erroneously deprived—Petitioner of her liberty interest absent a pre-detention hearing."). Here, Petitioner was provided with no pre-deprivation notice of the reasons for his re-detention or opportunity to contest those reasons. (*See* Pet. ¶¶ 24–25, 28, 31.) And Respondents do not dispute that Petitioner was not provided individualized reasons for the revocation of his bond or the opportunity to contest this revocation when he was re-arrested on August 8, 2026. (*See generally* Ans.) Accordingly, the Court finds that the second *Mathews* factor weighs in Petitioner's favor.

Finally, the third *Mathews* factor also weighs in Petitioner's favor. "Although the Government has a legitimate interest in enforcing the immigration laws, that interest does not overcome the Fifth Amendment's requirement that constitutional procedural safeguards be provided before re-detaining a person who has been safely residing in the community." *Singh*, 2026 WL 1334832, at *5. Respondents' interest in re-detaining Petitioner without notice, reasoning, and an opportunity to be heard is low. *See Pinchi*, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."); *Ortega*, 415 F. Supp. 3d at 970 ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). "[A]s many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." *Hasratyan*, 2026 WL 288909, at *4. Further, Respondents here offer no argument that might constitute a meaningful,

countervailing government interest to weigh against Petitioner's right to due process before being re-detained. (*See generally* Ans.)

In fact, Respondents have not just failed to offer any argument in opposition to any of the elements of Petitioner's procedural due process claim—they fail to acknowledge that claim at all. (*See generally* Ans.) The argument section of Respondents' Answer consists of three subsections, each of which is one paragraph long. The first subsection acknowledges that Petitioner has raised a *substantive* due process claim and at least tries to address it.[2] (Ans. 2.) The second subsection simply asserts that Petitioner has had a bond hearing, and the third that Petitioner has not exhausted his administrative remedies for review of that bond hearing. (*Id.* at 3–4.) None of these arguments speaks to Petitioner's claim that, irrespective of whether the recent decision to deny bond after his re-detention was legally adequate, the revocation of his initial parole violated his procedural due process rights. The failure to acknowledge Petitioner's procedural due process claim is especially telling because, in the last year, dozens—if not hundreds—of similar procedural due process claims raised by habeas petitioners in immigration detention have been granted by judges in this district, examples of which are cited above. Respondents are thus well-acquainted with this type of claim—and with its frequent outcome. If Respondents had presented an argument, based on either the facts or the law, that the procedural due process claim in this case is distinguishable, the Court would have considered it. But they have provided nothing for the Court to weigh against Petitioner's claim. Respondents are represented by competent counsel with full access to all the relevant facts concerning Petitioner's detention, and they offer no factual or legal argument for rejecting Petitioners' procedural due process claim. Their failure to do so constitutes forfeiture of the arguments they

---

[2] Though in doing so, the Answer cites inconsistently to authority addressing pre-removal-order detention and authority addressing post-removal-order detention, the latter of which is not relevant here.

*could* have made in support of their position. *See Martinez v. Sessions*, 873 F.3d 655, 660 (9th Cir. 2017) ("The government does not offer any argument on the merits of this petition; therefore, it has waived any challenge to the arguments [the opposing party] raised."); *Am. Int'l Enters., Inc. v. F.D.I.C.*, 3 F.3d 1263, 1266 n.5 (9th Cir. 1993) ("Issues raised in the brief that are not supported by argument are deemed abandoned.").

It thus appears, from the record before the Court, that: (1) Petitioner had a substantial private liberty interest in remaining out of custody; (2) the risk of erroneous deprivation of this liberty interest was high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker; and (3) no countervailing government interest has been identified that could outweigh the need to protect Petitioner's liberty interest with a pre-deprivation hearing. The Due Process Clause therefore entitled Petitioner to notice and a hearing prior to any re-arrest or detention. As no suggestion has been made that such process was provided prior to his August 8, 2026 re-detention, that re-detention violated the Due Process Clause. *See Singh*, 2026 WL 1334832, at *5 (finding that "Respondents' re-detention of Petitioner . . . without adequate pre-deprivation process, violated due process").[3]

**C. Remedy**

As discussed above, Petitioner has shown that his due process rights were violated. As many other courts have held in recent months, the appropriate remedy for such a violation is to place Petitioner in the position he was in prior to the violation—that is, he should be released from custody under the same conditions that governed his prior release. *E.g.*, *Badalyan v. Bondi*, No. ED CV 26-1401 FMO

[3] In light of the relief awarded on Petitioner's procedural due process claim, it is unnecessary to address his other claims at this time.

(JDE), 2026 WL 1365087, at *1 (C.D. Cal. May 15, 2026); *Singh*, 2026 WL 1334832, at *6. The Court therefore "concludes that 'Petitioner's release is necessary to return him to the status quo.'" *R.N.G. v. Semaia* 838 F. Supp. 3d 1035 (C.D. Cal. 2026) (quoting *Nazarian v. Noem*, No. 5:25-cv-2694-KK-ADS, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025)).

Petitioner has also requested permanent injunctive relief. (Pet. 26.) Again, the Answer fails to address this claim, effectively conceding that some form of injunctive relief is merited here. Accordingly, the Court ENJOINS Respondents, until and unless a final order of removal is entered against Petitioner, from re-detaining Petitioner without prior written notice and an opportunity to respond and be represented by counsel. Finally, Petitioner may seek reasonable costs and attorney fees after judgment has been entered in this matter, as provided in this Court's Local Rules and any statute authorizing such an award.

## VI. CONCLUSION

IT IS THEREFORE ORDERED THAT:

1. Judgment shall be entered GRANTING Count Two of the Petition and dismissing the remaining claims without prejudice as moot in light of the relief awarded on Count Two;
2. Respondents MUST RELEASE Petitioner **Erwin Jimenez Gonzalez (A 206-729-617)** from custody within 24 hours of entry of this Order under the same conditions of release that were in place prior to August 8, 2026; and

///

///

///

///

///

3. Respondents are ENJOINED, until and unless a final order of removal is entered against Petitioner, from re-detaining Petitioner without prior written notice and an opportunity to respond and be represented by counsel.

DATED: October 28, 2026

CHRISTINA T. SHAY
UNITED STATES MAGISTRATE JUDGE